**Joseph P. CERMINARA, Plaintiff,**

**v.**

**HILTON HOTEL CORPORATION dba Las Vegas Hilton, a Delaware corporation, and Bartenders Union, Local 165, Defendants.**

**No. CV–S–84–600–HDM.**

United States District Court,
D. Nevada.

Sept. 3, 1986.

Christopher G. Gellner, Las Vegas, Nev., for plaintiff.

Andrew S. Brignone, Lionel Sawyer & Collins, Las Vegas, Nev., for defendants.

## ORDER

McKIBBEN, District Judge.

The defendant, Bartenders Union Local 165, (Union), has moved for a summary judgment on plaintiff's second claim for relief relating to breach of duty of fair representation. Plaintiff opposes the motion and the matter has been submitted to the court for decision.

The relevant facts show that on March 23, 1984, plaintiff, a bartender at the Hilton Hotel in Las Vegas, Nevada, was assigned to tend one of several bars set up at the Ski Convention cocktail party held at the Hilton Pavilion. Liquor was to be served to convention attendees upon tender of colored drink tickets. This ticket procedure had been established to eliminate cash transactions with bartenders. Bartenders had been instructed not to serve liquor unless a ticket was tendered. Convention attendees were directed to cashiers if they attempted to purchase liquor with cash. On the day of the convention, Pat Ferguson, a material witness in this case, and the chief accountant at the Las Vegas Hilton, was asked by her supervisor, Craig Armstrong, to attend the Ski Convention cocktail party and attempt to secure liquor by paying cash. The food and beverage department of the hotel was interested in determining whether any of the bartenders would accept cash instead of tickets in violation of the hotel policy. Pat Ferguson arrived at the cocktail party at 7:00 P.M. on March 23, 1984. Upon her arrival she made three separate attempts to purchase liquor for cash from three bartenders. She testified before the union's Board of Adjustment that the plaintiff took the $3.00 she placed on the counter and served her a drink. At the conclusion of the shift, plaintiff was terminated for willful misconduct. Plaintiff immediately contacted his business agent, Edward Payton, to discuss his termination. On March 27, 1984, Hilton's Personnel Director was notified by letter of plaintiff's grievance. A Board of Adjustment hearing was scheduled for May 14, 1984, where the witnesses were questioned extensively by the union representative, Edward Payton. At the conclusion of the hearing, Payton requested that the plaintiff be reinstated with back pay and benefits. Thereafter, the Board announced its decision not to reinstate the plaintiff. A request was made promptly for arbitration of the matter and Payton forwarded the file to the union's attorney, Robert McCracken, for evaluation of plaintiff's arbitration request. On May 23, 1984, McCracken wrote Payton that the grievances had no substantial chance of success in arbitration and recommended that they not be arbitrated. Plaintiff was informed of the union's decision not to arbitrate and he requested reconsideration. The union Secretary-Treasurer

and Business Manager, Jack Stafford, reiterated to plaintiff the union's decision and thereafter plaintiff sought the advice of counsel. On September 14, 1984, a complaint was filed with this court which consists of two claims, one against the Hilton for wrongful discharge and the other against the union for breach of the duty of fair representation.

The issue for determination by this court is whether the union and its representation of plaintiff throughout the grievance process acted in an arbitrary, discriminatory or bad faith manner. Essentially, plaintiff alleges three bases for this litigation. First, that the prehearing investigation was grossly inadequate. Second, that the Board of Adjustment hearing was grossly inadequate. And third, the refusal to submit the matter to arbitration was arbitrary and motivated by hostility harbored against plaintiff.

## THE PREHEARING INVESTIGATION

■ Plaintiff contends that the investigation of the incident by the union representatives was grossly inadequate. He maintains the union investigation was limited to the following: (1) obtaining the written statement of Pat Ferguson and (2) telephoning the hotel's representative to inquire into the reasons for termination. Plaintiff also asserts the union representatives failed to obtain the cash register tapes used by the cashier assigned to the bar where plaintiff worked. It is plaintiff's position that these tapes would have substantiated and perhaps convinced the board members of the accuracy of his claim that on numerous occasions attendees with tickets of insufficient value were referred by him to the cashier for additional payment. The union does not dispute the investigation consisted of the obtaining of witness statements and conferring with hotel representatives.

A union's duty includes some minimal investigation in preparation of employee grievances, the thoroughness of which depends on the given case. *Tenorio v. N.L. R.B.*, 680 F.2d 598 (9th Cir.1982). Although the extent of the requisite investigation is a function of the surrounding circumstances, this does not necessarily raise a material issue of disputed fact. Rather, it requires a determination by the court whether the investigatory acts by the union were adequate. While here the union engaged in a limited amount of investigation, the only investigation not conducted by the defendants, which plaintiff maintains could have assisted in his defense, is the union's failure to secure the cash register tapes to present to the Board of Adjustment at the hearing. The court concludes the cash register tapes, if presented to the board would not have provided any substantial exculpatory evidence. The tapes would not bear upon whether plaintiff in fact took the three dollars allegedly tendered to him. At the most, it would only have substantiated his claim that on occasions he referred patrons with tickets of insufficient value to the cashier. In light of the direct testimony of Pat Ferguson, that plaintiff took the three dollars, such an inference would have been of little assistance at the hearing. Accordingly, the court concludes plaintiff has failed to show the defendant union's prehearing investigation was grossly inadequate or raises a material issue of fact which would preclude the granting of summary judgment.

## THE BOARD OF ADJUSTMENT HEARING

■ Plaintiff next contends the union representatives, who were present at the Board of Adjustment hearing were guilty of gross negligence in the examination of Pat Ferguson. Specifically, he contends that during the hearing union representatives failed to examine Pat Ferguson with the care and rigor necessary to raise within the minds of the board the reasonable inference that plaintiff had inadvertently taken the money believing it to be a tip. Minutes of the hearing, the accuracy of which the union does not dispute, indicate that union representatives did in fact examine Ferguson. While the examination may not have been performed with the skill and

expertise which might have been employed by an attorney, the questions did show a conscientious effort on the examiner's part to draw out the truth. The issue, therefore, is whether the conduct of the union amounted to arbitrary, discriminatory or bad faith representation. Clearly, negligent conduct on the part of a union does not constitute a breach of the union's fair representation. *Clayton v. Republic Airlines,* 716 F.2d 729, 732 (9th Cir.1983); *Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349, 1354 (9th Cir.1981). There is nothing in the record which suggests that the union showed reckless disregard for the plaintiff's rights. *Castaneda v. DuraVent Corp.,* 648 F.2d 612, 618 (9th Cir.1981).

### REFUSAL TO ARBITRATE

Plaintiff finally contends he would have been successful had this matter been taken to arbitration. He further contends that the union's failure to arbitrate was motivated by the existence of hostility. The only evidence in support of this claim is that the union representatives made a crude and disparaging comment to plaintiff when he persisted in objecting to their refusal to arbitrate. Clearly, a labor union's duty of fair representation is a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty and to avoid arbitrary conduct. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The unions have discretion in screening grievances and arbitrating only those they believe to be meritorious. *Melendy v. United States Postal Service,* 589 F.2d 256 (7th Cir.1978). Plaintiff has not shown any interaction with union representatives which would evidence a preexisting hostility. The facts indicate that when the union first assisted plaintiff in filing his grievance against the hotel, their relationship was a positive one. The only evidence before the court on the subject of hostility, is one disrespectful remark which was made well after the union had reached its informed decision, at the recommendation of counsel, not to submit this matter to arbitration. This does not, as a matter of law, constitute hostility of such a nature as would place the issue of fairness and the adequacy of the union's representation in question. Therefore, the court concludes plaintiff has failed to raise any triable issue of material fact on the question of whether the union breached its duty of fair representation by failing to (1) conduct an adequate prehearing investigation, (2) properly examine witnesses during the Board of Adjustment hearing and (3) in its refusal to submit this matter to arbitration.

Accordingly, defendant's motion for summary judgment is granted.

IT IS SO ORDERED.